# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES PEÑA, | : | 3:24-cv-938 (SVN) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| LT CZEREMCHA,, et al., | : | October 2, 2024 |
| *Defendants*. | : | |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff James Peña, a sentenced inmate[1] at Corrigan-Radgowski Correctional Center ("CRCC"), filed this civil rights action *pro se* under 42 U.S.C. § 1983.  He names five employees of the Department of Correction ("DOC"):  Disciplinary Hearing Officer ("DHO") Lieutenant Czeremcha, District Administrator Nick Rodriguez, Correction Officer Zack, Security Risk Group ("SRG") Coordinator Papoosha, and Director of Security Doe.  Plaintiff asserts claims under the United States Constitution and state law arising from his treatment while a pretrial detainee at New Haven Correctional Center ("NHCC").  He seeks damages and injunctive relief from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C.

---

[1] Information on the Department of Correction ("DOC") website shows that Plaintiff was sentenced on January 19, 2024, and is now housed at Corrigan-Radgowski Correctional Center ("CRCC").  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).
*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=378668 (last visited October 2, 2024).

§§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff is now housed at CRCC but entered custody of DOC as a pretrial detainee at NHCC on August 11, 2023. Compl., ECF No. 1, ¶¶ 4, 12. During his processing, he was strip searched, handcuffed, and then escorted to the Restricted Housing Unit ("RHU"). *Id.* ¶ 13. He claims that he lacked "proper notice" prior to being placed in the RHU, *id.*, and had not been issued any disciplinary report before being placed there. *Id.* ¶ 15.

During his confinement in the RHU, Plaintiff was "stripp[ed]" of regular recreation, commissary and visiting privileges, and of his ability to order electronics. *Id.* ¶ 14. He was separated from the general population and had no opportunity to engage in programming or religious services. *Id.* He was also handcuffed behind his back or in front whenever he exited his cell. *Id.* ¶ 15.

On August 14, 2023, Correction Officer Zack gave him a notice for a SRG hearing. *Id.* ¶ 16. Plaintiff claims that Officer Zack stated that the only evidence to support his SRG affiliation

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

was a tattoo on the left side of his eye. *Id.*

During the week of August 25, 2023, Plaintiff was called for an interview. *Id.* ¶ 17. At this time, he was informed of his upcoming hearing and requested that Officer Antoine serve as a witness at the hearing. *Id.* Plaintiff also explained to Officer Zack that his prior sexual assault conviction would render him a target if he were housed in the SRG Unit. *Id.* ¶ 18. Officer Zack responded that Plaintiff would be in the SRG Unit "because of the initials S.L. on [his] face," which supposedly stood for "Stone Love." *Id.* Plaintiff explained that his tattoo was the "Saint Louis Cardinals" trademark logo "STL" and that the Cardinals are his wife's hometown team. *Id.* ¶ 19.

Officer Zack indicated that he agreed that Plaintiff should not be placed in the SRG Unit on the basis of his tattoo. *Id.* ¶ 20. He stated that the DOC officials at the Central Office were upset with Plaintiff because of a previous lawsuit he had filed, and "this was their way of getting [him] back." *Id.* Plaintiff stated that he got the tattoo sometime last year when he was home and wondered how he could be punished for having it. *Id.* ¶ 21. Officer Zack responded that the issue was above his "pay rate" and that Plaintiff would have to "deal with it." *Id.*

On August 25, 2023, DHO Lieutenant Czeremcha entered the dayroom of Plaintiff's RHU housing unit to conduct his SRG hearing. *Id.* ¶ 22. After he entered the dayroom, DHO Lieutenant Czeremcha did not look at Plaintiff's file. *Id.* Instead, he took a call on his personal cell phone. *Id.* After he finished his personal call, he stated that Plaintiff was guilty and walked out of the room. *Id.*

Plaintiff tried to explain to DHO Lieutenant Czeremcha that he did not even have the "S.L." initials on his body. *Id.* ¶ 23. DHO Lieutenant Czeremcha did not care. *Id.* When Plaintiff inquired about the witnesses he had requested to be present at the hearing, DHO Lieutenant

Czeremcha responded: "No C.O. will ever be a witness in any hearing I conducted." *Id.* ¶ 24. Plaintiff claims that his guilty finding was based on malice and bias and subjects him to harsh conditions and a substantial risk of harm, especially in light of his prior sexually-related conviction. *Id.* ¶ 25.

As an SRG inmate, Plaintiff is separated from the general population for a one-year period even without any disciplinary tickets having been lodged against him. *Id.* ¶ 26. Further, in the SRG housing unit, Plaintiff is surrounded by gang members, and is subjected to restrictions on his recreation, commissary, access to electronics, visitation, and telephone calls (three phone calls a week or three phone calls a day depending on the SRG phase). *Id.* He is forced to forfeit participation in DOC programs, religious services, good time credit, parole, halfway house placement, and Risk Reduction Earned Credit ("RREC"). *Id.*

On August 28, 2023, Plaintiff filed an appeal of his SRG hearing disposition. *Id.* ¶ 28. He asserted that he was not afforded a fair hearing and that he was denied an opportunity to present witnesses. *Id.* He claimed that the DHO was biased; acted against DOC policy; took a personal telephone call during the hearing; and found Plaintiff guilty for having a tattoo that he does not have and absent any disciplinary report. *Id.* In addition, Plaintiff explained that his past convictions put him at risk of being housed in such a hostile environment and that his old "gang" tattoos are all on the right side of his body. *Id.* Plaintiff's appeal was denied. *Id.*

Plaintiff attempted to "sign in" to protective custody due to his fears about the hostile environment of the SRG Unit. *Id.* ¶ 29. Director of Security Doe and SRG Coordinator Papoosha both denied him protective custody status. *Id.*

Plaintiff's mental and physical health suffered due to his confinements in the SRG Unit and RHU Unit for a total of fifty-seven days without any disciplinary report. *Id.* ¶ 31. Plaintiff

claims that he was subjected to punitive treatment by being in Phase Two of the SRG Program. *Id.* ¶ 32.  He complains that he was exposed to gang members during recreation, had no in-cell electronics, was not able to clean his cell, and was subjected to limitations on his participation in DOC programs, religious services, commissary and visitation privileges, and access to his property.  *Id.*  He was only permitted to see "immediate family" and, therefore, could not receive visits from his children because they have a different last name from him and his name is not on their birth certificates.  *Id.*  He also could not access the law library or mental health treatment.  *Id.* In addition, he had "to pay an extortion fee" due to his status as a non-gang member with past sexual assault convictions.[3]  *Id.*

## II.    DISCUSSION

The Court will first consider whether Plaintiff has alleged any plausible claim of constitutional violation under 42 U.S.C. § 1983.  Plaintiff's complaint asserts violation of his First, Fourteenth, and Eighth Amendment rights.

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law."  *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  "The common elements to all § 1983 claims are:  (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

---

[3] The Court construes this allegation to suggest that Plaintiff had to pay a fee to other SRG inmates for protection.

### A.      Personal Involvement

The Court will first consider whether Plaintiff has alleged any plausible claims for damages against Defendants in their individual capacities.  A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  This is true with respect to supervisory officials, as well.  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").  Thus, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged any facts to describe conduct by District Administrator Rodriguez. Because the Second Circuit has established that a plaintiff must plead that supervisory defendants violated the plaintiff's constitutional rights "by [their] own conduct, not by reason of [their] supervision of others who committed the violation," *Tangreti*, 983 F.3d at 619, Plaintiff may not proceed on his constitutional claims against Defendant Rodriguez.  *See Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against nurse supervisor absent allegations about her conduct to violate his rights); *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing all claims against defendants where complaint established no connection between defendants and alleged constitutional violations).  Defendant Rodriguez is therefore dismissed from this action.

**B.      Fourteenth Amendment Substantive Due Process**

Plaintiff claims that Defendants violated his rights as a pretrial detainee.  "A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d. Cir. 2017).  The U.S. Supreme Court has held that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Nonetheless, a pretrial detainee's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001) (internal quotation marks and citations omitted).  A pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways.  First, he can show that the defendants were deliberately indifferent to the conditions of his confinement; second, he can show that the conditions are punitive.  *See Darnell*, 849 F.3d at 34 n.12.  Plaintiff alleges both based on his confinement in the RHU and SRG housing units.  *See* Compl. at 6.

*1.   Punitive Conditions*

To establish a substantive due process claim arising from a punitive placement, a pretrial detainee must allege facts tending to show that a condition was "imposed for the purpose of punishment," either directly by offering proof of such intent, or indirectly by indicating that the condition is not reasonably related to a legitimate governmental purpose, such as institutional security.  *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell*, 441 U.S. at 538).

In *Almighty Supreme Born Allah*, the Second Circuit concluded that prison officials violated substantive due process when they placed a pretrial detainee in administrative segregation

7

"solely on the basis of his prior assignment to (and failure to complete) the Administrative Segregation program during a prior term of incarceration" and when prison officials "adhered reflexively to a practice that did not allow for individualized consideration of [the plaintiff's] circumstances and that required him to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." *Id.* at 57.  A punitive intent may also be inferred if the conditions of confinement are "otherwise arbitrary."  *See Banks v. Michaud*, No. 3:20-cv-00326 (JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) (citing *id.* at 55); *see also Bell*, 441 U.S. at 539 (holding that if conditions of confinement are "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees").  The Second Circuit has, however, "found measures similar to Administrative Segregation not to violate substantive due process where prison officials subjected pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Allah*, 876 F.3d at 55–56.

For purposes of initial review, the complaint's allegations are sufficient to suggest that Plaintiff was "reflexively" placed in the RHU immediately after his entry into DOC custody, and that there was no "individualized consideration" about whether such restrictive conditions served a legitimate penological purpose.

Likewise, Plaintiff's complaint raises an inference that his SRG placement based on his tattoo was arbitrary—despite having a hearing to review his status—because his allegations suggest that there was no finding that his tattoo signified that he was actually an SRG member; and that there was no individualized inquiry into whether he posed a risk to institutional security and whether the SRG restrictive conditions were appropriate in light of the absence of a

disciplinary violation and his recent entry into custody. *See Shaw v. Washington*, No. 3:24-CV-00654 (KAD), 2024 WL 2053403, at *4 (D. Conn. May 8, 2024) (finding punitive placement on initial review based on allegations that Plaintiff was placed in RHU based on social media photographs without considering his explanation).

Accordingly, the Court will permit Plaintiff to proceed on his Fourteenth Amendment claims for damages arising from a punitive placements and conditions against Officer Zack, DHO Lieutenant Czeremcha, SRG Coordinator Papoosha, and Director of Security Doe (who are both plausibly alleged to have involvement in the Fourteenth Amendment violations)[4] in their individual capacities for further development of the record.

### 2. *Deliberate Indifference*[5]

Pretrial detainees also have a Fourteenth Amendment right against treatment that is the result of deliberate indifference by prison officials to their safety. *See Darnell,* 849 F.3d at 29.

Such a claim requires first establishing a risk of harm that is objectively serious, and then establishing the defendant's deliberate indifference to that harm. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Plaintiff must show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell,*

---

[4] As officials overseeing DOC security and the SRG Program, Papoosha and Director Doe plausibly were involved with Plaintiff's placement and confinement in restrictive housing and in the SRG Unit and are appropriate defendants for this claim at this initial stage. *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("[C]ourts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability.").

[5] Because Plaintiff's complaint alleges that Plaintiff was a pretrial detainee at the time of the incidents set forth in his complaint, the Fourteenth Amendment's substantive due process guarantee rather than the Eighth Amendment's prohibition against cruel and unusual punishment is applicable to his claims of deliberate indifference. *See Darnell*, 849 F.3d at 29 (holding that claims pertaining to the conditions of a pretrial detainees confinement in a state prison facility should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise"). Accordingly, Plaintiff's claims asserted under the Eighth Amendment are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted).  "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted).  This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)).  Conditions are also considered in combination where one combines with another to affect at least one identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("[T]he conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another.").

In addition, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id.* at 36.

Plaintiff alleges that he was subjected to certain restrictive conditions during his confinements in the RHU and SRG Unit.  The conditions that Plaintiff claims to have been exposed to during his confinement in the RHU for approximately one month include handcuffing whenever he exited his cell; restrictions on his recreation, commissary, and family visiting privileges; restrictions on his ability to participate in prison programs and religious services; and restrictions on his ability to order electronics.  Compl. ¶¶ 14–15.  These alleged conditions do not subject Plaintiff to a deprivation of a basic human need or expose him to a substantial risk of serious harm, however. *See Trimmier v. Cook*, No. 3:20-CV-396 (KAD), 2020 WL 5231300, at *5 (D. Conn.

Sept. 2, 2020) (finding no deprivation of a basic human need based on alleged conditions of limited daily telephone calls and recreation, restrictions on commissary spending to $40.00 a day, visits only with family members, lack of access to a law library and a toilet brush and ineligibility for good time credit, parole release, halfway house placement, transitional supervision and vocational or educational programs). *But see Caves v. Payne*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *5 (D. Conn. Apr. 6, 2020) (plaintiff showed objectively serious deprivations when "for 380 days, he was confined to his cell for twenty-three hours per day, had to eat in his cell in close proximity to the toilet, had to shower in unsanitary shower stalls, could visit only with immediate family, had restrictions on phone calls and commissary purchases, was denied exercise, and could not participate in any programs").

Likewise, Plaintiff's alleged SRG restrictions on his recreation, commissary, access to electronics or his property, visitation, telephone calls, participation in DOC programs and religious services, good time credit, parole, halfway house placement, and RREC do not support objectively serious conditions because they did not deprive him of his basic human needs or expose him to a risk of harm.  Compl. ¶¶ 26, 32; *see Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (considering conditions in phases two and three of Connecticut's SRG Program and concluding that "[a]lthough the conditions described may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional").

Plaintiff asserts that his RHU and SRG confinement "without a ticket" has taken "a toll" on his mental and physical health, Compl. ¶ 31, and that he had "to give up proper mental health treatment due to [his] 'SRG classification'" as a Phase Two SRG inmate. *Id.* ¶ 32.  However, Plaintiff has not alleged specific facts to show that he suffered from any objectively serious

11

physical or mental health condition requiring medical attention or that any Defendant was aware that his confinements caused him to require treatment for his physical or mental health condition. Plaintiff cannot premise a claim of deliberate indifference on a wholly conclusory allegation. *Iqbal*, 556 U.S. at 678; *see also Orellano v. Papoosha*, No. 3:20-CV-00480 (VLB), 2021 WL 2109132, at *8 (D. Conn. May 25, 2021) (dismissing claim where plaintiff failed to allege facts about his medical or mental health condition to satisfy the objective element of a Fourteenth Amendment deliberate indifference claim).

In addition, Plaintiff's allegation that he was not afforded "an opportunity for a cell clean up" while in Phase Two of the SRG Program is not sufficient to support an inference that he was exposed to unsanitary conditions of a constitutional dimension as a result of this restriction. *See Darnell*, 849 F.3d at 30 (unconstitutional unsanitary conditions of confinement must be assessed according to severity and duration). Plaintiff has not alleged any facts to describe an unsanitary cell condition during his confinement in the RHU or SRG Unit.

By contrast, Plaintiff's allegations that he was forced to live with other inmates with SRG affiliation who resented him for his lack of SRG affiliation and prior sexually-related convictions support an objectively serious risk to his health and well-being. Compl. ¶¶ 26, 32. Relevant to *mens rea* element, Plaintiff alleges that DHO Lieutenant Czeremcha maliciously found him guilty of SRG affiliation despite knowing his risk of harm from other SRG inmates due to his conviction, *id.* ¶ 25, that he informed Defendant Zack about SRG inmates targeting him due to his prior sexually-related conviction prior to his placement, *id.* ¶ 18, and that Defendants Papoosha and Director of Security Doe failed to afford him Protective Custody status. *Id.* ¶¶ 30–31.

These allegations are sufficient to support an inference that DHO Czeremcha, Officer Zack, Papoosha, and Director of Security Doe acted with indifference to his substantial risk of being

seriously harmed by other inmates while confined in the SRG Unit.  Accordingly, Plaintiff may proceed on his Fourteenth Amendment deliberate indifference claims against DHO Lieutenant Czeremcha, Officer Zack, SRG Coordinator Papoosha, and Director of Security Doe in their individual capacities for further development of the record.

C.    **Fourteenth Amendment Procedural Due Process**

The Court must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).  In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  However, the Second Circuit has held that "*Sandin* does not apply to pretrial detainees."  *Benjamin,* 264 F.3d at 188–89.

The level of procedural protection required depends on the purpose of the confinement. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).  For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding" the matter.  *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).[6]  For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary

---

[6] In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

action taken, and a limited opportunity to present witnesses and evidence in his defense.  *Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974).

Both the *Wolff* and *Hewitt* standards require "some evidence" to support the decisions to place an inmate in administrative or punitive segregation.  *Brown v. Semple*, No. 3:16-CV-376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)) (procedural due process requires that decision in connection with prison disciplinary hearing be "supported by some evidence in the record").  The Second Circuit has explained that a disciplinary determination must be supported by some "reliable evidence" of guilt. *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).

### 1.  *RHU Placement on August 11, 2023*

Plaintiff's complaint indicates that that he was placed in segregation on August 11, 2023, without providing him "proper notice."  Compl. ¶ 12.  For purposes of initial review, Plaintiff's allegations suggest that he was administratively detained without the procedural protections for notice and an opportunity to present his views required under *Hewitt*.  Plaintiff has not, however, provided any allegations to indicate that any Defendant named in this action was involved in his placement in administrative detention without complying with procedures required under *Hewitt*.

Accordingly, Plaintiff has not alleged a plausible claim of procedural due process violation based on his initial placement in the RHU pending his SRG determination.  The Court will dismiss this claim but permit Plaintiff an opportunity to amend his complaint to correct this deficiency, should he be able to identify a particular person or persons responsible for this initial placement.

2. *SRG Designation Hearing*

It is not clear whether an SRG designation hearing should be characterized as an administrative or disciplinary matter. Decisions from within this District have considered that a pretrial detainee may have a liberty interest in being free from his restrictive conditions of the SRG Program according to the procedural protections set forth in *Wolff*. *See Shelton*, No. 3:21-CV-637 (KAD), 2021 WL 3190398, at *6 (D. Conn. July 28, 2021) (concluding plaintiff plausibly alleged that his SRG classification presented a disciplinary process which required compliance with *Wolff*); *Woolard v. Santiago*, No. 3:19-CV-1256 (VLB), 2020 WL 2079533, at *7 (D. Conn. Apr. 30, 2020) (finding the procedural protections set forth in *Wolff* applied when plaintiff was designated an SRG member). Notably, Plaintiff alleges that DHO Czeremcha determined that he was "guilty" at his SRG hearing. For purpose of initial review, the Court considers whether Plaintiff was afforded the procedures required under *Wolff* prior to the determination of his SRG affiliation.

Plaintiff's complaint describes how DHO Lieutenant Czeremcha rendered his determination of Plaintiff's SRG "guilt" after he took a personal telephone call during the hearing; failed to review Plaintiff's file; ignored Plaintiff's explanation about his tattoo; and failed to afford him an opportunity to call his witnesses in his defense. Compl. ¶¶ 22–25. Additionally, Plaintiff's allegations indicate that he was found guilty of SRG affiliation on the basis of a tattoo showing the letters "S.L.," but he allegedly does not even have such a tattoo anywhere on his body. *Id.* ¶¶ 19, 25.

Thus, Plaintiff's allegations suggest that DHO Czeremcha violated Plaintiff's procedural due process rights by denying him an opportunity to present witnesses and evidence in his defense as required under *Wolff*, and by making a guilty determination that was not supported by reliable

evidence as required under *Elder*.  Accordingly, the Court will permit Plaintiff to proceed on a Fourteenth Amendment procedural due process claim against DHO Czeremcha in his individual capacity.

### D.     First Amendment Retaliation

Plaintiff asserts that he was punished for having a tattoo and for filing a lawsuit in violation of his First Amendment rights.  Compl. ¶¶ 33, 36.

Prison officials may not retaliate against inmates for exercising their constitutional rights. Thus, when prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a Section 1983 retaliation claim may be brought.  *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").

To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action."  *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted).  The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dolan*, 794 F.3d at 295 (internal quotation marks and citation omitted).

1. *Tattoo*

The First Amendment protects not only speech, but also expressive conduct, as long as the conduct is "sufficiently imbued with elements of communication to fall within the scope" of the First Amendment. *Spence v. Washington,* 418 U.S. 405, 409 (1974). Plaintiff alleges that his tattoo—which consisted of the letters "STL"—reflected the trademark of the Major League Baseball team St. Louis Cardinals and thereby expressed his "love" for the team and his wife's hometown. Compl. ¶ 19. For purposes of initial review, the Court assumes that Plaintiff has alleged facts to support an inference that his tattoo was "sufficiently imbued with elements of communication to fall within the scope" of the First Amendment. *Id.*

As for the second element that he suffered adverse action, the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). Consistent with other decisions within this District, the Court concludes that Plaintiff has adequately alleged adverse action by his SRG designation and placement in the harsh conditions of the SRG Unit. *See Caves*, 2020 WL 1676916, at *4 (finding plaintiff plausibly alleged adverse action arising from his being housed in the SRG Unit with many alleged conditions that are significantly harsher than those outside of the SRG Unit).

Plaintiff has not, however, alleged facts to satisfy the third element of a causal connection between the adverse action and his protected speech. Plaintiff alleges he was punished, by being designated an SRG member, for having a tattoo (that he claims was not even one that he had on his body). But no allegations support an inference that he was being punished for having a tattoo. Plaintiff's claim of First Amendment retaliation is similar to First Amendment retaliation claims of inmates challenging use of their social media posts to designate them as SRG-affiliated. In such

cases, decisions within this District have dismissed such claims because the inmate's social media posts were merely considered evidence of SRG affiliation, but the inmate was not being punished for the speech (posting on social media). *See Shaw*, 2024 WL 2053403, at *2 (citing *Caves,* 2020 WL 1676916, at *5); *Robinson v. Doe 1*, No. 3:23-CV-1631 (SVN), 2024 WL 1639539, at *3 (D. Conn. Apr. 16, 2024) (finding recent decisions including *Caves* to be "persuasive, and similarly conclud[ing] that Plaintiff has failed to allege the 'causation' element of a retaliation claim").

Accordingly, the Court dismisses as not plausible Plaintiff's claim of First Amendment violation arising from punishing Plaintiff for simply having a tattoo, though Plaintiff's procedural due process claim will encompass whether his tattoo constituted sufficient evidence to support his SRG affiliation.

### 2.  *Prior Lawsuit*

Plaintiff also alleges that Defendants Papoosha and Director Doe sought to designate him as an SRG inmate to retaliate against him for a prior lawsuit he had filed.  Compl. ¶ 36.

The filing of a lawsuit is constitutionally protected activity.  *Gomez v. Westchester Cnty.*, No. 18-cv-00244 (NSR), 2021 WL 4443379 at *16 (S.D.N.Y. Sept. 28, 2021).  Thus, the Court concludes that Plaintiff has adequately pleaded the first element of a retaliation claim.  As previously discussed, Plaintiff's allegations also support an inference that his SRG designation satisfied the second element of adverse action.

Relevant to the third element of causation, the Second Circuit has instructed that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms."  *Dolan*, 794 F.3d at 295.  Plaintiff's complaint alleges that Officer Zack advised him that "the Boys down at Central Offices" were "upset with [Plaintiff] cause of [his] pr[e]vious law suit" and he "guess[ed]" that Plaintiff's SRG designation was their "way of getting back at

[him]." Compl. ¶ 21. No allegations specifically state that either Papoosha or Director Doe was aware of Plaintiff's protected activity to raise an inference that his SRG affiliation was pursued with a retaliatory motivation, *see Schlosser v. Manuel*, No. 3:19-CV-1444 (SRU), 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (dismissing retaliation claims where plaintiff had not alleged that the defendant was aware of his protected activity), but Plaintiff has alleged that both SRG Coordinator Papoosha and Director of Security Doe work in the DOC's central office in Wethersfield, Connecticut. Compl. ¶¶ 8, 9. At this initial stage, and in light of Plaintiff's status as a self-represented, incarcerated plaintiff, the Court will permit this First Amendment retaliation claim to proceed against Papoosha and Doe in their individual capacities for further development of the record.

### E.      First Amendment Right to Association[7]

Although the Constitution "protects certain kinds of highly personal relationships" and there exists "a right to maintain certain familial relationships, including association among members of an immediate family," the Supreme Court has observed that the "freedom of association is among the rights least compatible with incarceration[,]" and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations and quotation marks omitted). To the extent a prison procedure curtails a prisoner's freedom to associate, the prisoner's constitutional right is not violated if the procedure "bear[s] a rational relation to legitimate penological interests." *Id.* at 132. In addition, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear

---

[7] The Second Circuit has acknowledged that the constitutional source of the intimate association right has not been "authoritatively determined" and has been considered under both the Fourteenth Amendment Due Process Clause and the First Amendment. *See Adler v. Pataki*, 185 F.3d 35, 42–43 (2d Cir. 1999); *City of Dallas v. Stanglin*, 490 U.S. 19, 23–24 (1989) (First Amendment "embraces" "intimate association" and "expressive association").

a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.*

Here, Plaintiff indicates that he lost "any rights to visits" from his family while in the RHU; was permitted no social visits except from immediate family while in the SRG Unit; and he was not able to see his children because his name is not on their birth certificates.  Compl. ¶¶ 14, 26, 32.  On this initial review, the Court cannot determine whether the restrictions on Plaintiff's visitation are rationally related to legitimate penological interests, given that Plaintiff alleges he had not violated prison rules and was designated as an SRG inmate on the basis of only a tattoo.  Accordingly, the Court will permit this claim to proceed for further development against Defendants Papoosha and Director Doe, who are plausibly involved in the familial restrictions set for inmates in the RHU and SRG Unit.

**F.    First Amendment Right to Free Exercise of Religion**

Plaintiff also alleges that he was deprived of religious opportunities while held in the RHU and SRG Unit.  To state a claim for a First Amendment free exercise deprivation, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers . . . legitimate penological objective[s]."  *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023).  Although Plaintiff has not described his religious beliefs with particularity, the Court assumes, for purposes of initial review, that he holds them sincerely because he mentioned he was deprived of religious opportunities.  The Court has no information about the penological objectives that may underlie the alleged deprivation of religious practice opportunities.  Accordingly, the Court will permit this claim to proceed for further development against Defendants Papoosha and

Director Doe, who are plausibly involved in the religious restrictions set for inmates in the RHU and SRG Unit.

### G.      Violation of Administrative Directive and Prison Policy

Plaintiff claims that his constitutional rights were violated by DOC staff's failures to comply with DOC policies or Administrative Directives.  Compl. ¶¶ 22, 40.  But such claims are not plausible.  Defendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because "violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983."  *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted); *see also Garcia v. Dep't of Corr.*, No. 3:22-CV-1328 (SVN), 2023 WL 8114212, at *9 (D. Conn. Nov. 22, 2023) (holding that plaintiff could not state a claim arising from prison officials' alleged violation of an "Administrative Directive or other policy").

Accordingly, Plaintiff's claim of constitutional violation arising from correctional staff's failures to comply with the DOC policies or Administrative Directives must be dismissed as not plausible.

### H.      Official Capacity Claims

Plaintiff's complaint indicates that he seeks relief against Defendants in their official capacities.  He seeks an injunctive order from this court to be removed from SRG classification and returned to the general population.  Compl. ¶ 43.

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation.  *See Va. Ofc. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123

(1908)).   A claim for injunctive relief, however, can only proceed against defendants who "plausibly have the authority to grant the prospective relief."  *See Smith*, No. 19-CV-1758, 2020 WL 2307643, at *6.  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff asserts claims in this action against Correction Officer Zack, a DOC employee who works at NHCC.  As Plaintiff is no longer housed at NHCC, his requests for official capacity injunctive relief against Officer Zack is moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility), *abrogated on other grounds as recognized by Tripathy v. McCoy*, 103 F.4th 106 (2d Cir. 2024).

Otherwise, Plaintiff is proceeding in this case on claims of constitutional violations arising from his SRG designation and confinement in the SRG Unit.  His request for reclassification and return to the general population indicates that he remains subject to these constitutional violations while he remains housed in the SRG Unit.  Accordingly, the Court will permit Plaintiff to proceed against DHO Lieutenant Czeremcha, SRG Coordinator Papoosha and Director of Security Doe in their official capacities on his request for injunctive relief.

To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

22

I.      **State Law Claims**[8]

Under 28 U.S.C. § 1367, a district court has supplemental jurisdiction over state law claims that are so related to the federal law claims "that they form part of the same case or controversy under Article III of the United States Constitution."   The Court can decline to exercise supplemental jurisdiction in certain circumstances, however.  *Id.* § 1367(c).  The Court considers whether Plaintiff has plausibly alleged any state law claims that fall within the Court's supplemental jurisdiction.

### 1.  *Negligence and Recklessness*

Connecticut General Statutes § 4-165(a) provides:  "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  "Although the meaning of these terms is not clearly defined, the Connecticut Supreme Court has held that the conduct must amount to 'more than gross negligence,' and evince 'a reckless disregard of the just rights or safety of others or of the consequences of the action.'"  *Blango v. Ludovico*, No. 3:23-cv-212 (SVN), 2024 WL 988164, at *12 (D. Conn. Mar. 7, 2024) (quoting *Martin v. Brady*, 261 Conn. 372, 379 (2002)). Accordingly, statutory immunity bars Plaintiff's claims to the extent they sound in negligence alone.  Nonetheless, the Court considers whether Plaintiff may pursue a claim under Connecticut common law for recklessness.

---

[8] Plaintiff refers to state law claims of discrimination in violation of the laws "set forth by" the Connecticut Commission on Human Rights and Opportunities ("CHRO").  Compl. ¶¶ 39, 41.  Plaintiff does not allege what specific state law Defendants violated in connection with these claims.  The Court's discussion of Plaintiff's federal claims under 42 U.S.C. § 1983 addressed his claims of retaliation and supervisory liability.  There are insufficient allegations in the complaint to state any claim for discrimination on the basis of either a protected characteristic or a class-of-one theory.  Plaintiff is advised that a mere reference to a violation of a statutory provision is not sufficient to state a claim for relief under that provision. *See, e.g.*, *Monger v. Conn. Dep't of Transp.*, No. 3:17-CV-00205 (JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based.").

Case 3:24-cv-00938-SVN   Document 11   Filed 10/02/24   Page 24 of 29

Under Connecticut common law, recklessness is "more than negligence, more than gross negligence." *Scandul v. Student Transp. of Am., Inc.*, No. 3:16-cv-58 (JBA), 2017 WL 1086766, at *2 (D. Conn. Mar. 22, 2017) (quoting *Bordonaro v. Senk*, 147 A. 136, 137 (Conn. 1929)). "Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." *Jenkins v. Road Scholar Trans., LLC*, 835 F. App'x 619, 622 (2d Cir. 2020) (summary order) (quoting *Doe v. Boy Scouts of Am. Corp.*, 323 Conn. 303, 330 (2016) (*en banc*)). "The actor must recognize that his conduct involves a risk substantially greater than that which is necessary to make his conduct negligent." *Id.* at 622 (cleaned up) (quoting *Doe*, 323 Conn. at 330). For the reasons discussed by the Court in the context of Plaintiff's section 1983 claims, Plaintiff may pursue a claim of recklessness against Defendants Czeremcha, Zack, Papoosha, and Doe for their reckless conduct that resulted in Plaintiff's exposure to a substantial risk of harm from other inmates in the SRG Unit.

### 2. Intentional Infliction of Emotional Distress

A plaintiff claiming intentional infliction of emotional distress must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 757 A.2d 1059, 1062 (Conn. 2000) (citations and internal quotation marks omitted).

Here, Plaintiff's allegations are insufficient to support a claim for intentional infliction of emotional distress. Plaintiff has not alleged any facts to suggest that any defendant acted intentionally to inflict emotional distress or that Plaintiff would suffer from severe emotional

distress as a result of their conduct.  Moreover, Plaintiff refers to his RHU and SRG Unit confinements as taking a "toll" on his mental health, but he has failed to allege facts describing the severity of his emotional distress.  Conclusory allegations are insufficient to state such a claim. *Ibbison v. Quiros*, No. 3:22-CV-01163 (SVN), 2023 WL 1766440, at *18 (D. Conn. Feb. 3, 2023) (noting plaintiff's conclusory allegations that he suffered "extreme, daily, emotional distress and mental anguish" were insufficient to support a claim of intentional infliction of emotional distress); *see also Abbott v. Conn. Specialty Servs., Inc.*, No. FBT-CV21-6106020-S, 2022 WL 1449145, at *2 (Conn. Super. Ct. May 9, 2022) (striking claims for intentional and negligent infliction of emotional distress where plaintiff failed to provide more than conclusory allegations of the elements of such claims); *Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998) ("Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress.").  This claim must be dismissed as not plausibly alleged.

### 3.  Connecticut Constitution

Plaintiff appears to assert claims under the Connecticut Constitution, Article First, §§ 5, 7, and 20.  Compl. ¶ 38.[9]  The Connecticut Supreme Court has recognized a private cause of action for monetary damages under Article I, §§ 7 and 9 of the Connecticut Constitution where the claims arose out of unreasonable searches and seizures and unlawful arrest by police officers.  *Binette v. Sabo*, 244 Conn. 23, 47–49 (1998).  In reaching its decision, the court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution."  *Id.* at 47.

---

[9] Plaintiff refers to Articles 5, 7, and 20.

The Connecticut Supreme Court has not applied section 7 or 9 in the context of a case filed by an inmate or a detainee involving claims relating to SRG classification. Therefore, because this claim raises a novel issue of state law, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims asserted pursuant to Article First, § 7 of the Connecticut Constitution. *See Ibbison v. Scagliarni*, No. 3:23-CV-1379 (SVN), 2024 WL 624045, at *13 (D. Conn. Feb. 14, 2024) (declining to exercise jurisdiction over claims under Article First, § 7).

In addition, district court decisions have previously declined supplemental jurisdiction over claims brought under Article First, §§ 5[10] and 20[11] of the Connecticut Constitution because "there is no established private right of action" under these sections. *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (declining jurisdiction over Article First, §§ 3, 8, and 20 claims); *Minto v. Dep't of Mental Health & Addiction Servs.*, No. HHD-CV17-6076730-S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20."); *Crowley v. Town of Enfield*, No. 3:14-CV-01903 (MPS), 2015 WL 4162435, at *4 (D. Conn. July 9, 2015) (declining supplemental jurisdiction over claims under Article First, §§ 8 and 20 because the decision whether to recognize a private right of action under those statutes raises a novel issue of state law); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23–27 (D. Conn. 2005) (declining to exercise supplemental jurisdiction over novel, complex, and undeveloped claims under Article First, §§ 4, 5, 7, 8, 9, and 14).

Given that Plaintiff's claims under the Connecticut constitution raise novel and undeveloped issues of state law, and out of deference to the State as the final arbiter of its own

---

[10] Article First, § 5 provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

[11] Article First, § 20 provides: "No person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

constitution, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under the Connecticut Constitution.  *See* 28 U.S.C. § 1367(c)(1).

## ORDERS

**Based on the foregoing, the Court issues the following orders:**

Plaintiff may proceed on his individual capacity claims based on:

(1) a Fourteenth Amendment substantive due process violation arising from punitive placements and conditions in the RHU and SRG Unit against Officer Zack, DHO Lieutenant Czeremcha, SRG Coordinator Papoosha, and Director of Security Doe;

(2) a Fourteenth Amendment substantive due process violation based on deliberate indifference to his health and safety against Officer Zack, DHO Lieutenant Czeremcha, SRG Coordinator Papoosha, and Director Doe;

(3) a Fourteenth Amendment procedural due process violation against DHO Lieutenant Czeremcha;

(4) a First Amendment retaliation claim against SRG Coordinator Papoosha and Director of Security Doe;

(5) a First Amendment right to association violation against SRG Coordinator Papoosha and Director of Security Doe;

(6)  a First Amendment free exercise of religion violation against SRG Coordinator Papoosha and Director of Security Doe; and

(7) state common law recklessness against Officer Zack, DHO Lieutenant Czeremcha, SRG Coordinator Papoosha, and Director of Security Doe.

Plaintiff may proceed on his official capacity claim for injunctive relief from ongoing constitutional violations arising from his continued confinement in the SRG Program against DHO Lieutenant Czeremcha, SRG Coordinator Papoosha, and Director Doe.

Defendant Nick Rodriguez and all other claims are DISMISSED.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against DHO Lieutenant Czeremcha, Officer Zack, SRG Coordinator Papoosha, and Director of Security Doe, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **November 4, 2024,** informing the Court that he elects to proceed with service as to the claims allowed to proceed in this initial review order.  If Plaintiff files this notice, the Court will begin the effort to serve process on DHO Lieutenant Czeremcha, Officer Zack, and SRG Coordinator Papoosha in their individual and official capacities as described above, though the Court will only be able to serve process on Defendant Director of Security Doe if Plaintiff provides the Court with Director of Security Doe's name and place of employment.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **November 4, 2024**.  **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any Defendants named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **November 4, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**<u>Changes of Address</u>.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1 requires that Plaintiff **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of October, 2024.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE